In re Charles R. NORRIS and
Mary L. Norris, Debtors.

Kentucky Higher Educ. Assistance
Auth., Appellant,

v.

Charles R. Norris, Appellee.

No. CIV.A.99–D–415–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 8, 1999.

Daniel L. Feinstein, Montgomery, AL, for Charles & Mary Norris.

Mark P. Williams, Birmingham, AL, and Diana L. Barber, Frankfort, KY, for Kentucky Higher Education.

Daniel L. Feinstein, Montgomery, AL, for Charles R. Norris.

Tom MdGregor, Montgomery, AL, trustee.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This case is before the court on appeal from the United States Bankruptcy Court for the Middle District of Alabama ("Bankruptcy Court"). Kentucky Higher Education Assistance Authority ("KHEAA") appeals from the final judgment of the Bankruptcy Court entered in its March 22, 1999 Order Denying Motion To Reconsider ("Mot."), in which motion KHEAA had moved the Bankruptcy Court "to alter, amend, reconsider, and set aside" its February 9, 1999 Order granting Charles R.

Norris' ("Debtor") Motion For Summary Judgment. (Mot. at 1.) KHEAA filed a Brief ("Br.") in support of the instant appeal on May 12, 1999. On May 27, 1999, Debtor filed a pro se Motion To Deny Appeal Of Order Denying Motion To Reconsider, which the court construes as a Response ("Resp.").[1] After a thorough review of the arguments of appellant's counsel and of the pro se debtor, the relevant law, and the record as a whole, the court finds that the final judgment of the Bankruptcy Court is due to be reversed and that this cause is due to be remanded to the Bankruptcy Court for further proceedings consistent with this Opinion.

## JURISDICTION AND VENUE

The court properly exercises jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a), which provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees...of bankruptcy judges.... An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a).

## STANDARD OF REVIEW

■ The district court reviews a bankruptcy court's factual findings under a "clearly erroneous" standard. See Fed. R. Bankr.P. 8013; Club Associates v. Consolidated Capital Realty Investors (In re Club Associates), 951 F.2d 1223, 1228 (11th Cir. 1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

---

1. Although Debtor was represented by counsel in the Bankruptcy Court, Debtor now "must approach the court in this matter without the advise of or representation by legal counsel...[because] we do not have the funds to hire additional counsel."

■ In contrast, the district court reviews "de novo" a bankruptcy court's legal conclusions. *See Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir.1990). "The district court is to independently examine the law and draw its own conclusions after applying the law to the facts." *Prestwood v. United States (In re Prestwood)*, 185 B.R. 358, 360 (M.D.Ala.1995). "On an appeal the district court...may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are undisputed. On October 26, 1992, Debtor obtained a $4000 PLUS/SLS loan to help finance the college education of his son, Patrick Norris.[2] (Debtor Aff. ¶¶ 4–5.) Patrick Norris was, at the time, a student at Draughns Junior College, now known as South College. (*Id.* ¶ 6.) Debtor was never a student at or an applicant for admission to Draughns Junior College, and no portion of the PLUS/SLS loan was used to further Debtor's education. (*Id.* ¶¶ 7–8.)

Approximately five years later, on November 18, 1997, Debtor and his wife, Mary L. Norris, filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. (Br. at 3.) In Schedule F, Debtor and his wife listed Sallie Mae, Inc., KHEAA's predecessor-in-interest on Debtor's PLUS/SLS loan, as an unsecured creditor on a $3,288.77 personal loan for their son's education expenses. (*Id.*)

Debtor filed an adversary proceeding against Sallie Mae, Inc., on September 2, 1998, seeking a discharge of his PLUS/SLS loan debt on the theory that the loan

is not an "educational loan" and, therefore, his debt therefrom is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(8). On January 12, 1999, Debtor filed a Motion For Summary Judgment. The Bankruptcy Court granted Debtor's Motion on February 9, 1999. On February 18, 1999, KHEAA filed a Motion To Alter, Amend, Reconsider, And Set Aside [the February 9, 1999] Order Granting Summary Judgment In Favor Of Plaintiff And Cross–Motion For Summary Judgment In Favor Of Kentucky Higher Education Assistance Authority ("Motion To Reconsider").

At a March 17, 1999 hearing, the Honorable A. Pope Gordon, United States Bankruptcy Judge, orally denied KHEAA's Motion To Reconsider, relying entirely on *Bawden v. First S. Fed. Sav. & Loan Ass'n (In re Bawden)*, 55 B.R. 459 (Bankr. M.D.Ala.1985), an opinion he authored nearly fourteen years ago. Judge Gordon provided the following reasoning in denying KHEAA's Motion:

> This is not an abuse by a student where the student seeks discharge of the loan. This, of course, is not a loan for the student. On the contrary, this is a loan to a father who didn't have any benefit, any financial benefit, from the loan. He merely borrowed it for his child.... The debtor is not a student, [ ] the debtor is a parent.... I'm not willing to bring people like this debtor within the scope of educational loan. I think that Congress, when it talked about educational loans, meant the students who borrowed the money.... And I don't think this is such a case.
>
> And so I respectfully deny your motion to alter. And I do agree...that this is a good case to go up on appeal. I may be wrong, but I'm not willing to change the view based on my feeling some years

---

**2.** The loan was obtained under the PLUS loan program, which was enacted to encourage parents to bear a share of a student's undergraduate educational costs. *See In re Reid*, 39 B.R. 24, 25–26 (Bankr.E.D.Tenn.1984) (citations omitted). PLUS loans are authorized by

Title 4, Part B of the Higher Education Act of 1965. *See* 20 U.S.C. § 1078–2. Loans made under the PLUS program are unusual, if not unique, in imposing sole liability for repayment of the loan on the parent. *Id.*

ago in Bawden. And my position hasn't changed since then. And so with that, I'll enter an order denying the motion. (Mar. 17, 1999 Hr'g Tr. at 24–26.) On March 22, 1999, Judge Gordon entered a written Order Denying Motion To Reconsider, in which he adopted the reasoning, including his reliance on *In re Bawden*, set forth in his prior oral opinion. The instant appeal by KHEAA followed.

## DISCUSSION

■ Because the facts in this case are undisputed, the court finds that the Bankruptcy Court's factual findings are not "clearly erroneous," and adopts same in their entirety. Therefore, the court's inquiry focuses on a de novo review of the Bankruptcy Court's legal conclusions. Specifically, the issue before the court on appeal is whether a loan incurred by a father to pay for his son's college education constitutes an "educational loan" pursuant to § 523(a)(8) of the United States Bankruptcy Code, thereby excepting the loan debt from discharge. After a "de novo" review of the Bankruptcy Court's legal conclusions, the court finds that Judge Gordon's final judgment is due to be reversed because § 523(a)(8) of the Bankruptcy Code excepts from discharge the educational loan debt incurred by Debtor on behalf of his son's college education.

KHEAA argues that Debtor's PLUS/SLS loan constitutes an "educational loan" and, therefore, that the plain language of 11 U.S.C. § 523(a)(8) excepts said loan debt from discharge. (Br. at 4–6.) Specifically, KHEAA contends that § 523(a)(8) excepts from discharge educational loan debts regardless of the status of the debtor, be the debtor a student beneficiary or a parent non-beneficiary. (*Id.*)

In response, Debtor relies on *In re Bawden* as standing for the proposition that § 523(a)(8) excepts from discharge only loan debts where the debtor is the loan beneficiary. (Resp.¶ 2.) In *In re Bawden*, Judge Gordon found that "the debtor's

obligation to the Alabama Commission on Higher Education should be included in the debtor's discharge because the exception to discharge for student loans applies only to student borrowers." 55 B.R. at 462.

■ When interpreting a statute the court must begin, and often end, with the plain language of the statute. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1337 (11th Cir.1999). The court should construe the statute according to the ordinary and plain meaning of the statute's words "because we assume that Congress uses words in a statute as they are commonly understood." *United States v. Veal*, 153 F.3d 1233, 1245 (11th Cir.1998), *cert. denied, Veal v. United States*, —— U.S. ——, 119 S.Ct. 2024, 143 L.Ed.2d 1035 (1999). The court should not review the statute's legislative history unless the statute is " 'inescapably ambiguous.' " *Veal*, 153 F.3d at 1245 (quoting *Solis–Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir.1985)). Accordingly, "the plain language of the statute [is deemed] to be conclusive as clearly expressing legislative intent, unless the resulting application would be 'absurd' or 'internal inconsistencies' must be resolved." *Veal*, 153 F.3d at 1245 (quoting *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).

Section 523(a) of the Bankruptcy Code excepts from discharge several categories of debts that a debtor could otherwise discharge from his bankruptcy estate. One such category is certain educational loan debts. Specifically, § 523(a)(8) of the Bankruptcy Code excepts from discharge:

[A]n individual debtor from any debt for an *educational* benefit overpayment or *loan* made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless -

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8) (emphasis added).[3]

In the instant case, Debtor does not contend that either subsection (A) or (B) applies. Further, the Parties agree that Debtor's PLUS/SLS loan is guaranteed by a government unit and that it was secured by Debtor in order to finance his son's college education. Therefore, it is undisputed that the nature and character of Debtor's PLUS/SLS loan debt make it the type of debt excepted from discharge under § 523(a)(8). The Parties disagree only as to whether Debtor's status as the loan beneficiary's father, and not as the loan beneficiary himself, is material to the determination of whether Debtor's PLUS/SLS loan debt is excepted from discharge under § 523(a)(8).

Section 523(a)(8) excepts from discharge "an *individual* debtor from *any* debt" stemming from a government guaranteed educational loan. 11 U.S.C. § 523(a)(8) (emphasis added). Interpreting this language, one court has stated:

The statutory language draws no distinction between obligors on an educational loan. The plain meaning of the statute strongly suggests that educational loans are nondischargeable whether the named borrower is a student or not. Indeed, the exceptions to the nondischargeability of student loans are "carefully delineated in subsections (A) and (B)." *Barth v. Wisconsin Higher Educ. Corp. (In re Barth)*, 86 B.R. 146, 149 (Bankr.W.D.Wis.1988).

*Karben v. ELSI (In re Karben)*, 201 B.R. 681, 683 (Bankr.S.D.N.Y.1996). By its plain terms, therefore, the statute qualifies a debtor only to the extent that he must be an individual, without regard to the individual debtor's status. Consequently, the plain meaning of § 523(a)(8) leads the court to find that "there is no requirement in § 523(a)(8) that the loans be for the direct educational benefit of the borrower [and that] in analyzing the exception to discharge under this section, the focus should be on the nature of the debt and the lender rather than on the status of the debtor." *James v. United Student Aid Funds, Inc. (In re James)*, 226 B.R. 885, 887 (Bankr.S.D.Cal.1998).

Here, Debtor is an individual, Debtor's PLUS/SLS loan is educational in nature, the loan is guaranteed by the government, and neither of the statute's exceptions applies. Accordingly, the court finds that § 523(a)(8) is not "inescapably ambiguous" and does not contain any "internal inconsistencies." *See Veal*, 153 F.3d at 1245. Therefore, the court finds that the plain language of § 523(a)(8) excepts Debtor's PLUS/SLS loan debt from discharge.

An examination of the case law reveals that the majority of courts that have considered this issue agree that § 523(a)(8) excepts from discharge a guaranteed educational loan debt even if the debtor is not the beneficiary of the loan. *See, e.g., In re Pelkowski*, 990 F.2d 737, 745 (3d Cir.1993) (holding that obligation that debtor incurred for her children's education was "educational loan" within meaning of statutory exception to discharge found in § 523(a)(8), and that statutory exception applies both to debts of student borrowers and to obligations incurred by their nonstudent co-obligors); *James*, 226 B.R. at 888 (finding that § 523(a)(8) applies to non-student debtors who are the sole obli-

---

**3.** Section 523(a)(8) was amended in 1998 to delete the provision found in subsection (a)(8)(A). Because the amendments became effective on October 7, 1998 and the adver-

sarial proceeding in this matter was filed on September 2, 1998, the court has applied the former version of § 523(a)(8) in this appeal.

gors on an educational loan); *Salter v. Educational Resources Inst., Inc. (In re Salter)*, 207 B.R. 272, 275 (Bankr.M.D.Fla. 1997) (determining that under § 523(a)(8) "the proper focus should be on the kind of debt involved, rather than how the money was spent, or who was the borrower"); *In re Karben*, 201 B.R. at 683 (finding that language of § 523(a)(8) does not refer to a student debtor, but applies to an individual debtor for any debt); *Uterhark v. Great Lakes Higher Educ. Corp. (In re Uterhark)*, 185 B.R. 39, 40 (Bankr.N.D.Ohio 1995) (stating that "[t]here is nothing in the language of § 523(a)(8) which limits its application to the recipient of educational benefits as opposed to others liable on educational loans"); *Education Resources Inst., Inc. v. Garelli (In re Garelli)*, 162 B.R. 552, 555 (Bankr.D.Or.1994) (concluding that under § 523(a)(8) "[t]he proper focus is on the particular kind of debt involved rather than how the money was spent or the nature of the debtor"); *Palmer v. Student Loan Fin. Corp. (In re Palmer)*, 153 B.R. 888, 898 (Bankr.D.S.D. 1993); *Education Resources Inst., Inc. v. Martin (In re Martin)*, 119 B.R. 259, 261 (Bankr.E.D.Okla.1990); *Education Resources Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 162 (Bankr. N.D.Cal.1989); *Educational Resources Inst., Inc. v. Selmonosky (In re Selmonosky)*, 93 B.R. 785, 787 (Bankr.N.D.Ga. 1988); *Barth v. Wisconsin Higher Educ. Corp. (In re Barth)*, 86 B.R. 146, 148 (Bankr.W.D.Wis.1988).

*In re Bawden*, on which Debtor relies and on which the Bankruptcy Court solely relied in rendering its decision, is one of the relatively few cases to find that § 523(a)(8) excepts from discharge only debts of the loan beneficiary.[4] In *In re Bawden*, a Chapter 7 debtor sought to discharge under § 523(a)(8) a debt stem-

ming from a government guaranteed educational loan for which her student daughter was the maker and for which debtor was the endorser. *See* 55 B.R. at 460. The issue before the bankruptcy court was whether § 523(a)(8) excepts from discharge a guaranteed student loan debt of the loan's endorser, or co-obligor, who is not the loan's beneficiary. *Id.* "Stated differently, the issue is whether as to this particular [endorser] debtor the loan is indeed an 'educational loan.'" *Id.* at 460–61. Answering these questions in the negative, Judge Gordon held that § 523(a)(8) applies only to student borrowers, reasoning that "[t]he mother in this case did not endorse the promissory note for the purpose of furthering her education. Thus, as to the mother, the loan is not an educational loan." *Id.* at 461–62.

In finding "that a guaranteed student loan is an educational loan only as to a student borrower," Judge Gordon bypassed the plain meaning of the statute's text and relied, instead, on the legislative history of § 523(a)(8) and the policy of the Bankruptcy Code, stating:

> The legislative history provides clearly that the student loan exception [to dischargeability] was intended to treat "students" differently than other debtors. (Citation omitted). Congress was unwilling to grant students the same discharge as other debtors where the students took out educational loans and then attempted to discharge those obligations after completing their education.

*Id.* at 461. From this, Judge Gordon reasoned, "to conclude that non-student comakers are covered by § 523(a)(8) would expand the coverage of that provision to parties not contemplated by Congress in enacting the new Bankruptcy Code." *Id.* In addition, excepting non-student borrowers

---

4. Other cases where courts have limited the application of § 523(a)(8) to student borrowers include *Kirkish v. Meritor Sav. Bank (In re Kirkish)*, 144 B.R. 367 (Bankr.W.D.Mich. 1992); *Northwestern Univ. Stu–dent Loan Office v. Behr (In re Behr)*, 80 B.R. 124 (Bankr.

N.D.Iowa 1987); *Washington v. Virginia State Educ. Assistance Auth. (In re Washington)*, 41 B.R. 211 (Bankr.E.D.Va.1984); and *Boylen v. First Nat'l Bank of Akron (In re Boylen)*, 29 B.R. 924 (Bankr.N.D.Ohio 1983).

from discharge would be contrary to the fresh start policy pervasive throughout the Bankruptcy Code. *Id.* (citing *In re Boylen,* 29 B.R. at 927).

This court respectfully rejects Judge Gordon's findings in *In re Bawden* for the following reasons. First, in interpreting § 523(a)(8), Judge Gordon erroneously gave the legislative history of § 523(a)(8) and the policy of the Bankruptcy Code precedence over the plain meaning of the statute. For reasons which this court has already discussed, Judge Gordon's findings in *In re Bawden* are antithetical to the plain meaning of § 523(a)(8).

Second, because the plain meaning of § 523(a)(8) is clear, resort to its legislative history is neither necessary nor proper. However, even if it were proper to consider the legislative history, the court finds that the legislative history does not support Judge Gordon's findings in *In re Bawden.* There is no evidence in the legislative history that Congress considered the status of the debtor to be a relevant consideration under § 523(a)(8). In particular, the legislative history does not indicate that § 523(a)(8) only applies to student borrowers. "Although there are occasional references in the legislative history to non-student co-makers, these references state only that co-makers are generally not required on educational loans." *Hammarstrom,* 95 B.R. at 164 (citing H.R. Rep. 95–595, 95th Cong., 1st Sess. 133, 136, 154 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, 5919, 5922, 5940).

In addition, Judge Gordon read the legislative history of § 523(a)(8) to mean that Congress enacted the provision only to deter student fraud. While deterring student fraud was a valid concern, Congress was also very interested in protecting the solvency and integrity of educational loan programs, as evidenced by the remarks of Representative Ertel, a sponsor of § 523(a)(8):

The purpose of this particular amendment is to keep our student loan programs intact. As many Members know, the default rate in the student loan program has been escalating to tremendous proportions in the past year.

* * * * * *

Without this amendment, we are discriminating against future students, because there will be no funds available for them to get an education.

*Garelli,* 162 B.R. at 555 (quoting 124 Cong. Rec. 1791 (1978)). "A loan program is affected just as much when a parent discharges a loan as when a student discharges a loan." *Id.* (citing *Hammarstrom,* 95 B.R. at 164). Consequently, Congress' purpose to preserve the integrity of the student loan programs is furthered by not discharging debts of student loan obligors, regardless of their status.

In light of the Congressional intent to prevent the discharge of student loans, the court notes a significant factual distinction between *In re Bawden* and the instant case, a distinction which Judge Gordon did not address. In *In re Bawden,* the student was the loan maker, and the debtor was the loan endorser. Here, Debtor is the loan maker. If discharge of the loan in the instant case is allowed, no one will remain to repay the loan. Contrarily, in *In re Bawden,* Judge Gordon recognized that, by relieving the debtor of her obligation on the loan, the student loan holder would still be obligated to repay her loan. Indeed, Judge Gordon stated that "[n]othing in this opinion is to be construed as an impairment of the right of the Alabama Commission on Higher Education to collect the indebtedness from the student borrower." *In re Bawden,* 55 B.R. at 462. Even if this court agreed with Judge Gordon's decision in *In re Bawden,* which it does not, the foregoing factual distinction leads this court to except Debtor's educational loan debt from discharge.

■ Third, encouraging a fresh start for the debtor is only one of many policies underlying the Bankruptcy Code. "While it is true that section 523(a)(8) runs counter

254

to the general 'fresh start' philosophy of the Bankruptcy Code, the same could be said of any exception to discharge. The exceptions to discharge exist because Congress felt that other public policies outweighed the debtor's need for a fresh start." *Barth*, 86 B.R. at 149; *see also Hammarstrom*, 95 B.R. at 165.

In sum, the court rejects Judge Gordon's application of § 523(a)(8) to the facts of this case. Section 523(a)(8) does not differentiate between a debtor who is a loan beneficiary and a debtor who is the parent of a loan beneficiary. Therefore, the court finds that Debtor's PLUS/SLS loan debt is an "educational loan" under § 523(a)(8) and, accordingly, is excepted from discharge.

## ORDER

Based on the foregoing, it is CONSIDERED, ORDERED, and ADJUDGED that the Final Judgment of the Bankruptcy Court, namely the Order Denying Motion To Reconsider, entered on March 22, 1999, be and the same is hereby REVERSED and that this cause be and the same is hereby REMANDED to the Bankruptcy Court for further proceedings consistent with this Opinion.